*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTAWAN TRANSMISSION'S AND
COMPLETE AUTOMOTIVE REPAIR, LLC and
ED'S MATTAWAN TRANS & COMPLETE
AUTOMOTIVE & TOWING, LLC,

UNPUBLISHED
April 13, 2023

      Plaintiffs/Counter-Defendants-
      Appellants,

v

No. 359395
Van Buren County Circuit Court
LC No. 19-069077-CK

HOME-OWNERS INSURANCE COMPANY,

      Defendant/Counter-Plaintiff-Appellee.

Before: SHAPIRO, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

This appeal after a jury verdict in a civil case requires us to analyze whether—and on what terms—a trial court may impose time limits to expedite completion of a trial. In doing so, we must balance two competing principles. First, " 'it has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment and whim.' " *MCI Communications v American Tel & Tel Co*, 708 F2d 1081, 1171 (CA 7, 1983). Second, "to impose arbitrary limitations, enforce them inflexibly, and by these means turn a . . . trial into a relay race is to sacrifice too much of one good—accuracy of actual determination—to obtain another—minimization of the time and expense of litigation." *McKnight v Gen Motors Corp*, 908 F2d 104, 115 (CA 7, 1990). This tension plays out in our trial courts, which "may impose reasonable time limits" on opening statements and closing arguments, MCR 2.513(C) and (L), but abuse their discretion "by imposing an utterly arbitrary time limit for witness examinations." *Barksdale v Bert's Marketplace*, 289 Mich App 652, 657; 797 NW2d 700 (2010). Plaintiffs, Mattawan Transmission's and Complete Automotive Repair, LLC and Ed's Mattawan Trans & Complete Automotive & Towing, LLC (collectively, "Mattawan"), insist that the trial court arbitrarily and impermissibly limited the time allotted for presentation of plaintiffs' case-in-chief and refused to allow plaintiffs to call two employee/agents of defendant in their case-

in-chief. We conclude, however, that the trial court did not abuse its discretion in any manner that affected plaintiffs' substantial rights, so we shall affirm.

## I. FACTUAL BACKGROUND

Mattawan operated a licensed transmission-repair facility until an electrically induced fire damaged their leased space on May 12, 2017. The leased space was part of a combined building in which other tenants were also affected. The fire was extensive, with damage concentrated in Mattawan's office space, but the fire left heavy soot throughout the building. Mattawan's business records and its office-related business personal property were largely destroyed. Mattawan carried commercial property insurance on the business and personal property through defendant, Home-Owners Insurance Company (Home-Owners). The insurance policy provided coverage for loss of business income for a period of up to 12 months.

To facilitate the determination of the insured business-income loss, Mattawan gave Home-Owners a 2016 tax return dated April 2017. An amended tax return was filed on October 11, 2017, reporting lower sales and a lower net profit. Home-Owners had been voluntarily paying Mattawan during the claim-investigation process based on the April 2017 tax return. Under the October 2017 amended return, the monthly payment from Home-Owners to Mattawan would have been reduced by approximately $2,000. Home-Owners contended that Mattawan submitted the April 2017 tax return not by mistake, but as part of an intentional, fraudulent scheme to obtain approximately ten percent more (i.e., approximately $2,000 per month) in lost business income. Mattawan asserted that Home-Owners could not meet its affirmative-defense burden of showing fraud by clear and convincing evidence. Prior to trial, both sides filed witness lists indicating that they intended to call Edward Barcus (Home-Owners's in-house claim investigator and expert in insurance-policy interpretation) and Timothy Hudson (the independent adjuster hired for the Mattawan claim).

Trial began on Monday morning, October 4, 2021, with jury selection, opening statements, and arguments over motions in limine. Mattawan's opening statement laid out the case they would present, citing evidence that Mattawan made an honest mistake in its record management. Further, Mattawan told the jurors that they would hear testimony about bank records and the maintenance of deposits, tax preparation, gambling problems, and how the insurance process started. From the testimony about insurance payments, the jurors would learn that the independent adjuster, Hudson, had performed an evaluation and that denial of benefits to Mattawan was a decision Barcus made. Then, at 4:12 p.m., Mattawan called its first witness, Angel Daly, the co-owner of the auto repair shop. Daly's testimony ended for the day at 4:54 p.m.

On Tuesday, October 5, 2021, the trial court convened court proceedings at 8:53 a.m. with arguments on evidentiary issues. The direct examination of Angel Daly resumed at 9:36 a.m. and continued until 3:30 p.m. Home-Owners's counsel conducted cross-examination from then until 4:58 p.m. On Wednesday, October 6, 2021, the trial court began the proceedings at 9:07 a.m. with the following statement:

> This is day three of our trial and we have had a significant discussion off the record with regard [to] the trial pace and the potential to complete this trial by Friday of this week which will be the deadline due to the unavailability of the judge sitting in this matter.

And then, as a result of that conversation, it appears we need to create some timelines, that will allow us to have the best chance to conclude this matter on Friday by 5:00 p.m., or close thereto.

So, the Court is going to establish some guidelines for completion of this matter.

Plaintiff has had the time on Monday plus all day yesterday to present their case. The Court will expect the Plaintiffs to wrap up their case today. And unless there are extenuating circumstances that will be our plan. And I know the, that may mean some chan[g]es in how you are planning to present things, Counsel, but if we're going to salvage this trial in this week we need to now work critical speed and critical efficiency. So, I'm anticipating that you will be able to do that, if that means not being able to call some of the Defendant's witnesses [in] your case in chief you may have to adjust accordingly. And I would suggest you arrange to have those witnesses last in your plan of providing your witnesses in this case.

All right. Any other discussion, questions about that?

After Mattawan's counsel placed an objection to the court's time limits on the record, Daly's cross-examination continued at 9:13 a.m. and ended at 9:53 a.m. Mattawan then presented the complete testimony of two more witnesses and started the direct examination of its damages expert, Edward Michael Benavidez. But when Mattawan's counsel did not finish the direct examination that day, the trial court allowed counsel to continue the direct examination of Benavidez the next morning.

After Benavidez finished testifying at 11:59 a.m. on Thursday, October 7, 2021, Mattawan rested its case-in-chief. Outside the presence of the jury, the following colloquy took place:

THE COURT: Well, here's the situation. The Court put you in a position where it required a red line completion time. With that, the Court indicated that you would be able to have, make possibly a wider latitude with Defendant's witnesses because you were planning to call one or two as your witnesses and that you certainly would have the right to call rebuttal witnesses. Court didn't open the door to say we can call back any witnesses because something else happened in the case. So, I'm not sure where you're going–

[COUNSEL FOR MATTAWAN]: Well, my thought is that we reserve the right to call, to use them as rebuttal witnesses to things that have, uh, come[ ] up in their case.

THE COURT: You have that right.

After the trial court denied Home-Owners's motion for a directed verdict, Home-Owners started calling its witnesses at 1:47 p.m., beginning with a forensic-accounting expert. Next, at 3:34 p.m., Home-Owners called Timothy Hudson, a witness Mattawan originally intended to call in its case-in-chief before the trial court imposed time limits during the trial. With the trial court pressing to complete Hudson's testimony that day, Mattawan had less than an hour for the cross-examination of Hudson before trial adjourned for the day at 5:26 p.m.

But on the final day of trial, Friday, October 8, 2021, the trial court permitted Mattawan to continue its cross-examination of Hudson at 9:40 a.m., and Hudson's testimony was finished less than 45 minutes later at 10:23 a.m. Home-Owners then called Edward Barcus, the other witness that Mattawan had originally planned to call in its case-in-chief. Starting at 11:41 a.m., Mattawan was given approximately one hour to complete its cross-examination of Barcus, whose testimony was finished about 80 minutes later, at 1:03 p.m. Then Home-Owners rested its case.

After the trial court addressed final jury instructions and a few related miscellaneous issues, the closing arguments began at 3:22 p.m. and continued until 4:27 p.m. The trial court then gave the jurors their final instructions, and jury deliberations began at 5:04 p.m. The jury returned its verdict at 7:09 p.m., finding that Mattawan's owners had: (1) made intentional misrepresentations, concealed material facts, engaged in fraudulent conduct, or made false statements; (2) willfully failed to cooperate or perform all of their duties under the insurance policy; and (3) made false representations on which Home-Owners relied in paying Mattawan business interruption benefits in the amount of $78,212.08, which should be repaid to Home-Owners. After the trial court issued a judgment memorializing the jury verdict, Mattawan appealed.

## II. LEGAL ANALYSIS

Mattawan argues that the trial court erred in imposing a time limit upon the presentation of its case-in-chief. In addressing time limits placed on the examination of witnesses at trial, we have observed that "MRE 611 grants a trial court broad power to control the manner in which a trial is conducted, including the examination of witnesses." *Hartland Twp v Kucykowicz*, 189 Mich App 591, 595; 474 NW2d 306 (1991). Therefore, "[w]e review for an abuse of discretion a trial court's exercise of its power to control the interrogation of witnesses" with the imposition of time limits. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 615; 792 NW2d 344 (2010). Moreover, to obtain a new trial based upon the mid-trial imposition of time limits, Mattawan must "prove that the trial court's time limitation affected its substantial rights." *Id*. at 619, citing MCR 2.613(A). With these standards in mind, we must consider the impact of the time limit imposed in this case.

By dint of MRE 611(a), a trial court may "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." We have cited that rule as a basis for justifying time limits imposed upon the testimony of witnesses at trial. For example, we upheld strict, mid-trial time limits imposed after "the trial court repeatedly expressed its concern about the pace of cross-examination, about counsel's exploration of irrelevant issues and tendency to pose the same questions over and over again." *Hartland Twp*, 189 Mich App at 596. Frustrated about the slow pace of the trial, "[a]t the beginning of the fifth day of trial, the trial court limited examination of witnesses to one hour for direct examination and one hour for cross-examination." *Id*. But the trial court in *Hartland Twp* did not strictly enforce those time limits for every witness, see *id*., so we affirmed the trial court's approach. Similarly, citing MRE 611(a), we upheld time limits of 90 minutes per witness (with each side allotted 45 minutes) against an argument that those limits were " 'arbitrary and unreasonable' " under the circumstances of the case, which included a more flexible approach that afforded much more time for one critical witness. *Alpha Capital*, 287 Mich App at 615-618. In contrast, when we faced ironclad time limits on the examination of each and every witness, we could "discern no reasonable basis for the trial court's determination that

-4-

limiting witness examinations to 30 minutes for each side advanced the trial-management goals set forth in MRE 611(a)." *Barksdale*, 289 Mich App at 657. Therefore, we "conclude[d] that the trial court abused its discretion by imposing an 'utterly arbitrary' time limit 'unrelated to the nature and complexity of [the] case or the length of time consumed by other witnesses.' " *Id*.

For three reasons, this case readily fits within the line of precedent approving time limits in Michigan. First, the trial court here did not impose strict limits upon the length of testimony of each witness. Instead, the trial court imposed a single deadline for the completion of Mattawan's case-in-chief, allowing Mattawan to decide how much of that time to devote to each witness called. Second, even after establishing a deadline for the completion of Mattawan's case-in-chief, the trial court relented when Mattawan's expert was still in the middle of direct examination when the time limit expired. Even though the case-in-chief was to end on Wednesday, October 6, 2021, the trial court permitted Mattawan's expert to continue testifying for the entire morning on the following day, Thursday, October 7, 2021, before calling on Mattawan to rest its case-in-chief. Third, when the trial court imposed the mid-trial deadline, it nonetheless stated that Mattawan retained the right to present additional evidence in rebuttal even if that evidence came from witnesses who testified in Mattawan's case-in-chief. For all of those reasons, this case is much more similar to *Hartland Twp* and *Alpha Capital* than to *Barksdale*. Accordingly, we find no abuse of discretion in the trial court's employment of a flexible deadline for plaintiff's case-in-chief.

Mattawan further contends that their case was prejudiced when the trial court did not allow them to call two additional witnesses in their case-in-chief. Specifically, Mattawan planned to call two employee/agents of defendant, i.e., Timothy Hudson and Edward Barcus. But Mattawan must concede that both of those witnesses were called in defendant's case-in-chief, when Mattawan had the opportunity to cross-examine both of those witnesses. Indeed, Mattawan's cross-examination of Hudson started on Thursday, October 7, 2021, spanning nearly 50 pages of trial transcript, and then resumed on Friday, October 8, 2021, for 25 more pages of trial transcript that concluded with plaintiffs' counsel's statement that "I don't have anything further." And after redirect examination, plaintiffs' counsel was permitted to conduct re-cross examination until he stated: "Nothing further, your Honor." Similarly, Mattawan was allowed to conduct extensive cross-examination of Barcus spanning 60 pages of trial transcript and then re-cross examination of the witness. Consequently, the trial court enabled Mattawan to thoroughly examine both witnesses with the benefit of leading questions. See MRE 611(d)(2). Under the circumstances, Mattawan "has failed to prove that the trial court's time limitation affected its substantial rights." *Alpha Capital*, 287 Mich App at 619.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney